UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


BERGER ENTERPRISES,

               Plaintiff,

                                            Civil Action No. 10-CV-14024
vs.                                    HON. MARK A. GOLDSMITH

ZURICH AMERICAN INSURANCE
COMPANY, et al.,

               Defendants.
_____/


**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION TO DISMISS**


      Before the Court is Defendants' motion to dismiss.  For the reasons explained below, the

motion will be granted in part and denied in part.

**I.      Factual and Procedural Background**

      Plaintiff Berger Enterprises (Berger) is a North Dakota contractor in the business of

commercial and industrial demolition, excavation, and site work.  Second Am. Compl. ¶¶ 1, 6

(Dkt. 22).  Defendants are TolTest, Inc. (TolTest), an Ohio corporation doing environmental

remediation, design, management, and engineering, and Zurich American Insurance Company

(Zurich).  Id. ¶¶ 2, 3, 7.  The events of this case relate to a contract between TolTest and Berger

concerning a project at the Grand Forks Air Force Base in North Dakota.

      In August 2008, TolTest contracted with the United States Government to serve as the

general contractor for the demolition and restoration of housing and roads on a United States Air

Force (USAF) base.  As required by statute, TolTest (as principal) and Zurich (as surety)

furnished a payment bond to the Air Force for the project.  Id. ¶ 8.  TolTest then contracted with Berger to do certain demolition and site work.[1]  The Purchase Order was signed in October 2008.  The initial Agreement between the two parties priced the work at $3,517,500.  According to the second amended complaint, the scope of Berger's work was increased via a "change order"; the total contract price was eventually increased to $5,924,148.68, based on changes in the work required.  Id. ¶ 11.

According to the second amended complaint, Berger "experienced delays, interferences and disruption in the prosecution of the [w]ork" as a "direct result of TolTest failing to timely follow the original contract construction schedule, failing to properly represent the conditions that would be encountered at the Project, failing to represent to Berger that additional equipment would assist in the timely completion of the Project, failing to timely coordinate the activities of the subcontractors working in advance of Berger, and failing to manage and sequence the efficient and timely demolition of the structures at issue."  Id. ¶ 12.  Berger alleges that, despite the fact that it completed the work in a responsible and professional manner, TolTest failed to fully pay Berger.  According to the second amended complaint, there is "a balance due Berger under the Agreement in excess of $3,000,000 for additional labor cost overruns, additional equipment rental costs, extended overhead and retention."  Id. at 79.[2]

---

[1] There are multiple documents describing the terms of this agreement.  There is a signed seven-page document entitled "Purchase Order" that describes the tasks to be done and the price to be paid.  Purchase Order (Dkt. 15-2).  This document refers to several attachments, including a "Subcontractor Services Agreement Terms and Conditions," id. at 3, and a "Statement of Work," id. at 4.  The Court will refer to these documents as the "Purchase Order," the "Terms and Conditions," and the "Statement of Work," respectively.  The Court will also refer to these documents as a whole as the "Agreement."

[2] Berger also alleges that TolTest's misrepresentations caused it to spend nearly $1.5 million in additional equipment.  Id. at ¶ 118(a).  Although the complaint does not make clear whether this amount is above and beyond the $3 million figure, Berger's prayer for relief, requesting

In October 2010, Berger filed suit in federal court; it amended its complaint in December 2010. In January 2011, Defendants filed a motion to dismiss. In its response, Berger noted its desire to amend the complaint to clarify the basis for its claims. Pursuant to this Court's order, Berger filed a second amended complaint on April 15, 2011, and the Court denied Defendants' motion to dismiss as moot. The second amended complaint alleges seven counts: violation of the Miller Act[3]/claim on the payment bond (Count 1), breach of contract (Count 2), quantum meruit (Count 3), account stated (Count 4); promissory estoppel (Count 5), innocent misrepresentation (Count 6), and violation of the Ohio Prompt Pay Act[4] (Count 7). On May 16, 2011, Defendant filed a motion to dismiss the second amended complaint (Dkt. 24). The parties submitted briefs and the Court held a hearing on the motion on August 4, 2011.[5]

## II.   Analysis

Defendants contend that Berger has failed to state a claim on which relief may be granted with regard to all seven counts. Before turning to each argument Defendants make with regard to each claim, the Court notes the governing standard and applicable law.

### A.   Standard for Motion to Dismiss

In evaluating a motion to dismiss pursuant to Rule 12(b)(6),

[c]ourts "must construe the complaint in the light most favorable to plaintiff," League of United Latin Am. Citizens v. Bredesen, 500 F.3d 523, 527 (6th Cir. 2007) (citation omitted), "accept all well-pled factual allegations as true[,]" id., and determine whether the "complaint states a plausible claim for relief[,]" Ashcroft v. Iqbal, --- U.S. ----, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009).

---

judgment "in excess of [$3 million]," id. at 25-26, rather than "in excess of $4.5 million" appears to indicate that the additional equipment expense is included in the $3 million figure.

[3] 40 U.S.C. § 3131.

[4] Ohio Rev. Code § 4113.61(A)(1).

[5] Hereinafter, all references to the "complaint" refer to the second amended complaint (Dkt. 22), the relevant complaint for purposes of this motion.

However, the plaintiff must provide the grounds for its entitlement to relief, Bovee v. Coopers & Lybrand C.P.A., 272 F.3d 356, 361 (6th Cir. 2001), and that "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). A plaintiff must "plead [ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949. A plaintiff falls short if she pleads facts "merely consistent with a defendant's liability" or if the alleged facts do not "permit the court to infer more than the mere possibility of misconduct . . . ." Id. at 1949, 1950.

Albrecht v. Treon, 617 F.3d 890, 893 (6th Cir. 2010) (first bracket added, all others in original).

## B.    Choice of Law

The Court agrees with Defendants that federal law applies to Count 1 (Miller Act), Ohio law applies to Counts 2, 3, 4, 5, and 7 (breach of contract, quantum meruit, account stated, promissory estoppel and Ohio Prompt Pay Act), and that Michigan law applies to Count 6 (innocent misrepresentation). Although Berger argues that North Dakota law applies to Counts 3, 4, and 5 of the complaint (quantum meruit, account stated, promissory estoppel), the argument is not well taken.

As the parties agree, the relevant provision is Article 16.1 of the Terms and Conditions.[6] It states in pertinent part:

> [t]he validity, interpretation, and performance of this Agreement and the Purchase Order and all other contract documents shall be governed, construed and interpreted in accordance with the laws of Ohio. . . .

Terms and Conditions (Dkt. 15-3 ¶ 16.1). Despite the broad language of the choice-of-law provision, Berger contends that its quasi-contract claims fall outside of its purview. Berger argues that its quasi-contract claims are based, in part, on additional work that was outside the

---

[6] The Court notes that federal courts sitting in diversity apply the choice-of-law provisions of the forum state, which here is Michigan. See Uhl v. Komatsu Forklift Co., Ltd., 512 F.3d 294, 302 (6th Cir. 2008).

4

scope of the original Agreement between the parties. Berger contends that the Court should instead apply a balancing test and conclude that North Dakota law is applicable. See Resp. at 5-6 (Dkt. 26).

The Court rejects this argument. Berger does not effectively argue why its quantum meruit, account stated, and promissory estoppel claims are not covered by the provision above. Berger's own example – having to do the additional work of unforeseen asbestos removal – cuts against it. Berger obtained a "change order" so that it could receive compensation for the additional cost of removing the asbestos material. Compl. ¶ 39. However, the very process of obtaining a "change order" is set out in the terms of the Purchase Order. See Purchase Order at 2.[7] Thus, Berger sought modification pursuant to the Agreement's own terms.

In addition, Berger's reliance on Moses v. Business Card Express, Inc., 929 F.2d 1131 (6th Cir. 1991), is misplaced. The clause at issue in Moses was arguably less broad than the one at issue here. The Moses clause stated that "[t]his Franchise and License Agreement and the construction thereof . . . shall be governed by the laws of the State of Michigan." Id. at 1140. The Moses court concluded that the plaintiff's claims for fraud and misrepresentation were encompassed by the language "[t]his Franchise and License Agreement and the construction thereof." Id. The court noted that the plaintiff's claims put the validity of the contract in issue. Id.

Although Berger's claims for quantum meruit, account stated, and promissory estoppel may not put the validity of the contract in issue in the same sense as the fraud claim in the Moses case did, as alleged, these claims do concern "the validity, interpretation, and performance of this Agreement and the Purchase Order and all other contract documents," the verbatim description

---

[7] The Court notes that such a change order, even if not "performance under the Agreement," would certainly amount to an "other contract document," as provided for in the Terms and Conditions language.

of matters that fall under Ohio law.  As noted above, Berger engaged in procedures set out in the Agreement regarding the unforeseen asbestos removal on which the quasi-contract claims are at least partially based.  Further, the alleged basis for Berger's account-stated claim is TolTest's response to a "formal claim" that Berger made to TolTest in accordance with the Terms and Conditions of the Agreement.  See Compl. ¶ 103 (describing basis for account stated claim); TolTest response to Berger's "formal claim" (Dkt. 22-18).  Although the Court can envision a case where a party's quantum meruit, account stated, and promissory estoppel claims would not depend upon the interpretation and performance of the contract, under the present allegations, these claims fall within the language of the choice-of-law provision.  Accordingly, Ohio law applies to these claims.

### C.    Application

#### 1.    Miller Act

The Miller Act requires all federal contractors to obtain a payment bond "for the protection of all persons supplying labor and material in carrying out the work provided for in a contract."  40 U.S.C. § 3131(b)(2).  The Act also governs any action by those supplying labor and material to bring a civil action to recover on the payment bond.  40 U.S.C. § 3133(b). Defendants argue that Berger failed to state a claim because it does not allege that it met certain time deadlines set out in the contract.  The pertinent part of the Act is as follows:

(b) Right to bring a civil action.--

(1) In general.--Every person that has furnished labor or material in carrying out work provided for in a contract for which a payment bond is furnished under section 3131 of this title and that has not been paid in full within 90 days after the day on which the person did or performed the last of the labor or furnished or supplied the material for which the claim is made may bring a civil action on the payment bond for the amount unpaid at the time the civil action

> is brought and may prosecute the action to final execution and
> judgment for the amount due.
>
> (2) Person having direct contractual relationship with a
> subcontractor.--A person having a direct contractual relationship
> with a subcontractor but no contractual relationship, express or
> implied, with the contractor furnishing the payment bond may
> bring a civil action on the payment bond on giving written notice
> to the contractor within 90 days from the date on which the person
> did or performed the last of the labor or furnished or supplied the
> last of the material for which the claim is made.

> (4) Period in which action must be brought.--An action brought under this
> subsection must be brought no later than one year after the day on which the last
> of the labor was performed or material was supplied by the person bringing the
> action.

40 U.S.C. § 3133(b)(1)-(2) & (4).

Defendants argue that the complaint does not provide any dates for the last labor or delivery of supplies, much less provide dates for the completion date of the work on each of its multiple claims under the Miller Act. Defendants also argue that "Berger's failure to plead the date that its work was completed also calls into question the Miller Act's one-year statute of limitations." Motion at 6.

Berger responds that it has sufficiently pled a Miller Act claim. It argues that, contrary to Defendants' assertion, it performed a single project, not several individual work projects requiring multiple claims under the Miller Act. Response at 7. Berger argues that its allegations in the complaint that it (i) furnished labor and materials from September 29, 2008 to May 26, 2010 and (ii) gave "timely, proper, and ongoing notice to TolTest" of its expenses, including its May 26, 2010 "formal claim," are sufficient. Compl. ¶¶ 78-79.

The Court concludes that Berger has pled a Miller Act claim. While Defendants are correct that Berger only has a right to payment under the bond if the dates of the completion of its work and the commencement of the suit comport with the statute, Berger has sufficiently pled

with regard to these elements.  The complaint, which this Court must accept as true, alleges an end date for furnishing labor and materials of May 26, 2010, well within a year of the filing of the instant suit.  Compl. ¶ 78.  Further, the suit was not filed until over 90 days after that date, meeting the requirement of 40 U.S.C. § 3133(b)(1).  Although the complaint is not detailed about the nature of the notice it gave TolTest, Defendants do not challenge the sufficiency of Berger's notice.

With regard to Defendants' argument that Berger is obligated to break the project up into smaller separate claims and plead the date with regard to each one, the Court cannot credit such an argument at the motion-to-dismiss stage.  As a preliminary matter, the Court notes that Defendants cite no authority (nor has the Court found any) requiring that the specific dates of completion of work be affirmatively set out in the complaint in order to state a Miller Act claim.  Even if such information were required to eventually prove a successful claim for relief, it is a different matter to conclude that the information is required to be included in the complaint (i.e., that it is essentially an element of the claim), and that a defendant is entitled to dismissal without such affirmative pleading.  Although Defendants asserts as much in their brief, Motion at 6, they cite no authority for the proposition.[8]

---

[8] Defendants assert that "where, as here, a plaintiff's Miller Act claim relates to several alleged claims . . . *a plaintiff must plead the date in which the **original work** on **each** of its claims was supplied.  Id. (emphasis added)*.  United States of America, for the use of Lee Masonry Products, Inc. v. Ginley, [No. 06-CV-143-TBR, 2009 WL 2568713, (W.D. Ky. 2009)]."  Motion at 6.  First, it is unclear to what earlier source the "Id." refers – the Court was unable to locate support for the assertion in prior-cited sources.  Second, the Lee case does not stand for the proposition that a plaintiff must affirmatively plead the date information.  Although the Lee court did grant the defendant's motion to dismiss the plaintiff's Miller Act claim, the problem in Lee was not that Lee failed to plead dates under the Miller Act.  Rather, the parties agreed upon the established dates, and those dates conclusively demonstrated that the action was (as to one party) filed beyond the one-year statute of limitations of 40 U.S.C. § 3133(b)(1)-(2) & (4).  See Lee, 2009 WL 2568713 at **2-3.

Even assuming, however, that Berger does have an obligation to affirmatively state a completion-of-work date in the complaint, the issue of whether the project work consisted of one large project (not necessitating separate claims under the Miller Act), or several separate jobs (necessitating separate claims under the Miller Act) certainly seems an issue that turns on the interpretation of the factual record.  Accordingly, it would not be proper to dismiss the Miller Act claim at this time.[9]

### 2.  Breach of Contract

There are numerous claims underlying Berger's breach-of-contract count.  They include that (i) TolTest induced Berger to purchase nearly $1.5 million in equipment by suggesting that it was necessary to complete the work within the project schedule, but then caused delay of the schedule, (ii) TolTest failed to follow the proper procedures that would allow Berger to use a substitute material for backfilling, causing a delay in Berger's work, (iii) TolTest refused to request a time extension from the USAF, despite Berger notifying TolTest of its discovery of "asbestos containing material" above and beyond what was identified in the environmental survey contemplated in the Agreement, resulting in "delay, shut-down, and disruption" for Berger, (iv) TolTest failed to properly coordinate and manage the site, resulting in occupants remaining in homes to be demolished, and causing delay and additional costs for which TolTest refused to compensate Berger, (v) TolTest did not timely obtain a necessary dig permit, which delayed Berger's work, and then did not request a time extension or additional compensation for Berger from the USAF, (vi) TolTest prevented Berger from demolishing certain structures for several months because it delayed in disconnecting telephone lines, but TolTest did not request a

---

[9] Defendants make the additional argument that Berger fails to state a claim because it did not allege procedures consistent with certain requirements in the party's agreement concerning the submission of costs.  Because the requirements of the agreement to which Defendants point are not requirements of the Miller Act, the Court rejects Defendants' argument.

time extension or additional compensation for Berger, and (vii) TolTest failed to seek an extension of time or additional compensation for Berger when the delay of a third-party group that relocated several residences caused a multiple-month delay for Berger, about which Berger had promptly notified TolTest.  Compl. ¶¶ 16-68.  On May 26, 2010, Berger submitted to TolTest a formal claim for the additional costs it incurred due to TolTest's "delays, interferences, and disruptions," but TolTest refused to compensate Berger, "in violation of the agreement."  Id. at ¶¶ 62, 69-70.

TolTest raises several arguments in response, two of which merit close examination here.[10]

> **a.   The Change-Order Requirement:  Seeking Time Extensions, Additional Compensation, and/or Other "Work Changes"**

---

[10] The other arguments that TolTest raises do not warrant individual analysis.  The Court concludes that they fall into one of two categories.  First, TolTest makes arguments that dispute non-central facts to the claim.  For example, with regard to the delay caused by the third-party's belated removal of residences, TolTest argues that the complaint "does not allege that TolTest was responsible for the pace at which [the third party] operated."  Response at 8.  This is true. However, the allegedly improper behavior on the part of TolTest in that claim is that, in light of the delay, TolTest failed to seek an extension of time or additional compensation for Berger. The fact that TolTest was not responsible for the delay does not impair the allegation.

Second, TolTest makes factual arguments not suited to a motion-to-dismiss analysis.  For example, regarding the substitute material for backfill, TolTest's motion brief argues, "Berger alleges that TolTest was 'responsible for handling all submittals from Berger to the USAF in a timely and professional manner' but there is no assertion that TolTest failed to do so.  Rather, Berger acknowledges in Complaint Ex 11, p. 13-14 that TolTest timely made the request . . ." This type of argument simply does not acknowledge that in the current procedural posture of the case, the Court is not evaluating two competing interpretations of the complaint's allegations. Rather, the Court must accept complaint allegations as true.  And Berger's allegations provide a very different account of this claim.  The complaint explicitly argues that TolTest failed "to promptly and efficiently coordinate with the USAF Berger's desire to use recycled concrete as backfill" and failed to "properly administer the submittal process."  Compl. ¶¶ 31-32.  Further, in the cited exhibit to the complaint, Berger never, as TolTest spins it, "acknowledges . . . that TolTest timely made the request."  Rather, Berger clearly contends that TolTest delayed in not submitting the crushed concrete samples to the USAF in a prompt fashion.  See Dkt. 22-11 at 14: Berger's May 2010 "Formal Claim" to TolTest (noting that Berger had given TolTest the samples by January 6, yet at a January 14 meeting TolTest indicated that it had not yet received them).

TolTest repeatedly argues that in order for Berger to be entitled to additional compensation for any reason, as required by the Agreement, Berger "must go through the change order process." Motion at 13. Relatedly, TolTest contends that, under the Agreement, Berger, not TolTest, is the one who must seek any time extensions on the project. Motion at 9. The issue of which party has the responsibility to obtain an extension of time, additional payment, or a modification of work is of central importance – many, if not all, of Berger's allegations of the instances of breach involve TolTest's failure to request a time extension or additional compensation. TolTest cites several sections of Article 6 of the Terms and Conditions as setting out Berger's (and not TolTest's) obligation to take these steps. The Terms and Conditions state in pertinent part:

ARTICLE 6. CHANGES IN THE WORK

6.1  Changes in the work may be accomplished after execution of the Agreement and without invalidating this Agreement, by Change Order, Change Directive[,] or order for minor change in the work, subject to the limitations stated in this Article 6 and elsewhere in the contract documents.

6.1.1  A Change Order is a written direction to the Subcontractor, signed by TolTest and the Subcontractor that modifies the Subcontractor's (i) scope, and/or (ii) schedule, and /or (iii) cost. . . .

. . .

6.1.4  Only the TolTest Procurement Department is authorized to issue Change Orders . . . .

. . .

6.1.6  Changes in the work performed by the Subcontractor without receipt of a Change Order . . . issued by the TolTest Procurement Department shall be performed at the Subcontractor's own risk and cost.

6.1.7  Subcontractor agrees to perform such changed or additional work within its trade and related to its Scope of Work upon request of TolTest. TolTest may initiate Change Orders for itself, at the request of the Client,

or at the request of Subcontractor as hereinafter set forth.  A Change Order or request by Subcontractor for a Change Order shall be in writing and in the form specified by TolTest.

6.2   In the event that TolTest directs Subcontractor to perform extra work, additional work or changed work, Subcontractor agrees that it will promptly perform and diligently complete such work whether or not TolTest and Subcontractor have agreed on the cost of such work.  Subcontractor shall submit to TolTest a lump sum or guaranteed maximum price proposal for such work, which proposal shall include a detailed cost breakdown for each component of the work, indicating both quantities and unit prices and such proposal shall be submitted to TolTest not later than 10 days after such proposal is requested by TolTest.  If a lump sum price, guaranteed maximum price, or unit price for the extra work cannot be agreed upon, Subcontractor agrees to do the work on the basis of it actual cost, plus percentage fees for overhead and profit . . . .

. . .

6.5  In the event of any dispute, controversy, or claim for additional compensation or time extensions, notice in writing shall be given to TolTest no later than seven (7) days following the occurrence on which [the] claim is based.  Any claim not presented within such time period shall be deemed waived by Subcontractor.  Such notice shall describe the dispute, controversy or claim in detail so as to allow TolTest to review its merits.  Promptly thereafter, Subcontractor shall provide detailed information to substantiate such claim including supporting documentation and calculations, and including any information requested by TolTest.

6.6  If the Subcontractor shall make any claim against TolTest for extra work or additional compensation for which the Client or its agents may be liable, TolTest may present such claim or claims to the Client for determination and decision provided (a) such claim is not, in the judgment of TolTest, made in bad faith, (b) Subcontractor has given notice as set forth above and in the form required by the Prime Contract, and has presented the claim to TolTest in sufficient time for TolTest to review the claim in advance and present it to the Client within the time required by the Prime Contract and, (c) Subcontractor has . . . requested in writing that TolTest present the claim . . . .  Any work performed without an approved change order by Subcontractor beyond its contractual agreement with TolTest shall be performed at Subcontractor's own risk.  Nothing herein shall be construed to obligate TolTest to pay for any work that it has not approved through a written change order.

Terms and Conditions, Article 6 (Dkt. 15-3 at 7-9).  Berger argues that "the Agreement makes clear for there to be a modification and an increase in compensation for any [of Berger's] claims, Berger must go through the change order process."  Motion at 13.

After having reviewed the relevant provisions of the Terms and Conditions, the Court concludes that, at this stage, TolTest's argument does not warrant dismissal of the breach-of-contract claims.  As a preliminary matter, the Agreement itself does not provide that obtaining a change order is the only way to communicate, or receive relief for, any delay or increased cost.  It simply states that "Changes in the work may be accomplished . . . by Change Order."  See id. ¶ 6.1.

Further, Article 6 does not appear to describe a single, unified process; rather, it describes several different procedures (not all of which explicitly involve obtaining a "change order"), and at this stage it is not clear to the Court which procedure(s) Berger specifically was obligated to follow.  For example, many of the provisions in Article 6 apply where the subcontractor provides "additional" or "changed" work.  To the extent Berger does not seek compensation for different work, but rather seeks compensation for the delay that it incurred in performing the original work, it may be that the only provision applicable to Berger is ¶ 6.5, which applies "in the event of any dispute, controversy, or claim for additional compensation or time extensions."  Id. (emphasis added).  Paragraph 6.5 does not appear to require the specific "change order" referenced in other sections of Article 6.  Rather, ¶ 6.5 requires that Berger give TolTest notice in writing not later than seven days after the event on which the claim is based and describe the claim in detail.  The Court cannot conclude at this stage that Berger has not met these requirements.[11]

---

[11] The complaint's allegations may be consistent with the requirements of ¶ 6.5.  The complaint alleges that in May 2010, Berger submitted to TolTest a "formal claim" for delay costs.  And, the

In addition, TolTest appears to contend that Berger was required to submit to it a "lump sum or guaranteed maximum price proposal" and a "detailed cost breakdown" for the change or delay as set out in ¶ 6.2.  Motion at 13.  However, these requirements do not appear to apply here.  Paragraph 6.2 (where these requirements are located) only applies "[i]n the event that TolTest directs Subcontractor to perform extra work, additional work or changed work."  As TolTest did not direct Berger to perform additional or changed work, ¶ 6.2's requirements do not apply to Berger.

For these reasons, the Court rejects Defendants' argument that the complaint should be dismissed because Berger was required to go through the change-order process and the complaint fails to demonstrate that it did.  At this early stage, the Court cannot conclude that Berger did not engage in the Agreement-described procedures that were applicable to its claims.

### b.    "No Damage for Delay" Contract Language

The second argument that warrants analysis here is TolTest's contention that the Agreement prevents Berger from maintaining a claim for monetary compensation for delay or suspension of work.  The relevant provisions are as follows:

> TolTest shall have the right at any time to delay or suspend the work or any part thereof without incurring liability therefor.  Subcontractor shall not be entitled to any additional compensation for any such delays.

complaint mentions prior written notifications that Berger made to TolTest on several claims.  See Compl. ¶¶ 46, 54, 67 (citing exhibit 8, a February 5, 2009 letter, and exhibit 10, an April 23, 2009 letter).  The Court cannot conclude at this point that those notifications were not sufficient or were not timely under ¶ 6.5.  (As Defendants do not acknowledge any request by Berger, they do not make any arguments as to the requests' potential insufficiency.)

Further, to the extent Berger makes allegations that TolTest's error was failing to request time extensions or additional compensation from the USAF, ¶ 6.6 may apply to those claims.  As with Berger's ¶ 6.5 claims, the complaint could be understood to allege that Berger met the requirements of ¶ 6.6.  Paragraph 6.6 requires that a subcontractor give TolTest notice "as set forth above."  Although it is not clear exactly what "above" content to which this phrase refers, it is certainly plausible that it refers to the preceding paragraph, ¶ 6.5, the requirements of which Berger allegedly meets.

> Subcontractor's sole and exclusive remedy for any delays or suspension of the work shall be the entitlement to an extension of time for completing the Agreement as, in the opinion of TolTest, is just and reasonable. . . .

Terms and Conditions ¶¶ 5.2, 5.3.

Berger responds that these "no damage for delay" provisions are unenforceable under section 4113.62 of Ohio Revised Code, which provides in pertinent part:

> Any provision of a construction subcontract, agreement, or understanding, or specification or other documentation that is made part of a construction subcontract, agreement, or understanding, that waives or precludes liability for delay during the course of a construction subcontract when the cause of the delay is a proximate result of the owner's or contractor's act or failure to act, or that waives any other remedy for a construction subcontract when the cause of the delay is a proximate result of the owner's or contractor's act or failure to act, is void and unenforceable as against public policy.

Ohio Rev. Code § 4113.62(C)(2). Berger notes that the Sixth Circuit, in an unpublished opinion, found exactly the same language as is in ¶ 5.2 and ¶ 5.3 to be void and unenforceable under the statute. See Acme Contracting, Ltd. v. TolTest, Inc., Nos. 08-2072, 08-2289, 2010 WL 1140997, at **6-7 (6th Cir. Mar. 24, 2010). TolTest does not contest that Acme reached that result. However, it argues that the Acme court was not presented with, and did not consider, a key point: the Ohio provision by its terms necessarily only applies to "construction contract[s]," and the statute defines a "construction contract" as being limited to "a contract or agreement for the design, planning, construction, alteration, repair, maintenance, moving, demolition, or excavation of a building, structure, highway, road, appurtenance, or appliance situated on real estate located in this state." Ohio Rev. Code § 4113.62(G)(5) (emphasis added). TolTest contends that, because the Agreement pertains to a demolition of structures situated on real estate in North Dakota, the Ohio statute does not apply.

The Court agrees with TolTest. Although the Court has not found any authority specifically applying the "in this state" provision to limit the reach of the statute, the plain language of the statute makes this understanding clear. Berger argues otherwise, noting that the Acme case employed the Ohio statute provision to make void TolTest's "no damage for delay" language governing work in Georgia. Response at 13. This is true. However, there is no evidence that either the Sixth Circuit, or the district court, was presented with the argument that the statute limits its own application to in-state projects. Even setting aside the fact that Acme is an unpublished case, a case cannot be authoritative on a point that was not considered. Rinard v. Luoma, 440 F.3d 361 (6th Cir. 2006) ("[W]e continue to subscribe to the long-held standard that '[q]uestions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents.'").

Accordingly, the Court concludes that section 4113.62 of the Ohio Revised Code does not prevent enforcement of the "no damage for delay" language in ¶ 5.2 and ¶ 5.3 of the Terms and Conditions.

However, Berger argues that other authority does prevent enforcement of the "no damage for delay" language, namely, case law concluding that such provisions are unenforceable where the delays were caused by "the active interference of the other contracting party, or if the delay was of a kind not contemplated by the parties." Response at 14. In response, TolTest maintains that this argument does not help Berger because (i) Berger did not plead the exceptions, (ii) Berger does not satisfy the Twombly standard, and (iii) Ohio law does not include active interference as an exception. Dkt. 27 at 3: Reply.

The Court agrees with Berger that case law does prevent enforcement of the "no damage for delay" language under the circumstances currently pled. Ohio law does recognize "several . .

16

. exceptions to the enforceability of a no-damage-for-delay clause," including "delay that . . . was not intended or contemplated by the parties to be within the purview of the provision." DiGioia Bros. Excavating, Inc. v. Cleveland Dep't of Pub. Util., 734 N.E.2d 438, 450-451 (Ohio Ct. App. 1999). Berger's complaint includes allegations that the delay was not contemplated at all by the parties. For example, the complaint describes the negative impact on Berger of the third-party entity not completing its removal of certain residences until some seven months after the date set by TolTest's and Berger's project schedule. Compl. ¶¶ 63-65. The clear implication is that neither Berger nor TolTest contemplated this delay. The complaint also describes Berger's discovery of "[asbestos-containing material] above and beyond what was identified in the environmental survey provided for in the Agreement." Id. ¶ 36. This allegedly resulted in delay while TolTest made a determination on how to handle the situation, resulting in a negative impact on Berger's anticipated work plan and "significant financial overruns to Berger." Id. ¶¶ 36-38. Again, as the complaint specifically alleges that the conditions were different than what was contemplated by the parties in the Agreement, the clear implication is that the parties did not contemplate this delay. The complaint also describes TolTest's failure to disconnect certain telephone lines on the allegedly mistaken understanding that the telecommunications company, and not TolTest, was to disconnect the lines. Id. ¶¶ 54-61. Berger, at least, did not contemplate such a delay.[12]

---

[12] TolTest is correct that Berger cannot claim that interruption in the sequencing of its work was not contemplated because the Agreement specifically states that Berger "should not assume that construction can be carried out in a continuous uninterrupted manner." Reply at 3 (Dkt. 27); Terms and Conditions, Article 4 (Dkt. 15-3). However, dismissal of the breach-of-contract claim as a whole would be inappropriate, as the claim is not separated into separate counts, at least some of the allegations are sufficient to make out a claim, and at this early stage the Court cannot determine which, if any, claims are barred by that brief clause in the Agreement.

Accordingly, the Court concludes that the complaint sufficiently alleges exceptions to the enforceability of "no damage for delay" clauses that have been recognized by Ohio courts. Thus, Berger's claims for monetary compensation for delay or suspension of work will not be dismissed.

### 3.      Quantum Meruit and Promissory Estoppel

TolTest argues that because it and Berger have an express contract, Berger may not sue for equitable relief, and thus, Berger's quantum meruit and promissory estoppel claims must be dismissed. Berger's response does not address this argument. The Court notes, however, that Berger's complaint could be understood to concede the argument to a degree with regard to quantum meruit: the complaint states that the quantum meruit argument is "pled in the alternative if it is determined that there is no contract for the amounts claimed in this Second Amended Complaint." Compl. ¶ 92.

In any case, TolTest is correct that, under Ohio law a party may not generally maintain claims based on there being an implied contract at the same time it maintains claims based on an expressed contract. As one court explains,

> [u]nder Ohio law, absent fraud, illegality, or bad faith, a party to an express contract may not bring a claim for equitable relief, particularly when the agreement contains a provision governing the allegedly inequitable conduct at issue. See, e.g., Hughes v. Oberholtzer, 162 Ohio St. 330, 123 N.E.2d 393, 396 (Ohio 1954) (holding that it "is generally agreed that there cannot be an express agreement and an implied contract for the same thing existing at the same time"); Delicom Sweet Goods of Oh., Inc. v. Mt. Perry Foods, Inc., No. 04 CA 4, 2005 WL 525185, at *4 (Ohio Ct. App. Mar. 2, 2005) (noting that a party cannot prevail on a theory of unjust enrichment when they have formed an express contract); Wolfer Ent., Inc. v. Overbrook Dev. Corp., 132 Ohio App.3d 353, 724 N.E.2d 1251, 1254 (Ohio Ct. App.1999) (holding that a "party seeking a remedy under a contract cannot also seek equitable relief under a theory of unjust enrichment or quantum meruit, because the terms of the agreement define the parties' relationship").

Comtide Holdings, LLC v. Booth Creek Mgmt. Corp., 554 F. Supp. 2d 821, 827 (S.D. Ohio 2008), rev'd on other grounds, 335 F. App'x 587 (6th Cir. 2009).  Accordingly, the Comtide court granted a motion to dismiss the plaintiff's claims for, inter alia, quantum meruit and promissory estoppel.  Id.

The same result applies here.  It is undisputed that the parties have an integrated agreement.  Further, the complaint's quantum meruit and promissory estoppel arguments concern the project that the Agreement governs.  See Compl. ¶¶ 93, 108-109.  Accordingly, Berger improperly seeks both equitable relief and relief under the contract; Berger's quantum meruit and promissory estoppel claims will be dismissed.

### 4.    Account Stated

The Court agrees with TolTest that Berger's complaint fails to state an "account stated" claim.  "An 'account stated' exists where the account has been examined and the balance admitted as the true balance between the parties.  It is based upon an assent to its correctness and can be implied when an account is rendered by the creditor to the debtor and the debtor fails to object within a reasonable amount of time."  Chase Bank, USA v. Curren, 946 N.E.2d 810, 816 n.2 (Ohio Ct. App. 2010).  "If, however, 'the acknowledgment or admission is qualified, and not absolute, or if there is but an admission that something is due, without specifying how much . . . there is no account stated.'"  HHL Group, Inc. v. Ken's Auto Serv. Ctr., Inc., No. 10CA0021-M, 2011 WL 860427 at *4 (Ohio Ct. App. 2011) (quoting Lichter v. S.T. Kenyon & Co., 137 N.E.2d 782, 786 (1956)).

The complaint does not meet the requirements.  It does not allege that TolTest agreed to any particular sum.  Further, its allegation – that TolTest agreed to an account stated when it stated in its written response to Berger's formal claim that it was willing to assist Berger "to

develop an appropriate delay claim," to be submitted to the USAF – is nonsensical.  Compl. ¶

103.  Again, the "agreement" cited is not for a particular sum or amount owed.  See TolTest

response to Berger's formal claim (Dkt. 22-18 at 29).  More significantly, the very document that

the complaint cites to support the assertion (TolTest's written response to Berger's formal claim)

itself contradicts Berger's allegation.  TolTest only volunteered to help to develop Berger's

potential delay claim as an alternative.  Its primary response to Berger's request was that "the

entirety of the Berger delay claim should be stricken."  Id.

### 5.    Innocent Misrepresentation

TolTest argues that Berger's claim for innocent misrepresentation – based on alleged oral

agreements between the parties – fails to state a claim.

> Berger's Innocent Misrepresentation claim should be dismissed because the
> parties' Agreement contains a valid merger clause.  Article 16.5 of the Agreement
> provides[:]
>
>> This document, and any and all attachments, which are identified
>> herein, constitutes the entire Agreement between TolTest and the
>> Subcontractor.   There  are  no  conditions,  agreements,  or
>> representations between the parties except those expressed herein.
>> This Agreement may be altered, amended, or appealed only by a
>> duly executed written instrument.
>
> [Terms and Conditions], § 16.5.  "[F]raud that relates solely to an oral agreement
> that was nullified by a valid merger clause [has] no effect on the validity of the
> contract."  UAW-GM v. KSL Recreation Corp., 228 Mich. App. 486, 492, 495-
> 496 (1998) citing 3 Corbin, Contracts, § 578. Berger's fraud claim turns on
> alleged agreements concerning Berger's required performance and compensation,
> and the parties' respective responsibilities.  The merger clause nullifies any such
> agreement not included in the Agreement.

Motion at 19-20.  The Court agrees with TolTest's merger clause argument and notes that Berger

offers no response to it.[13]   Accordingly, the innocent misrepresentation claim is dismissed for

failure to state a claim.

### 6.       Ohio Prompt Pay Act

Under the Ohio Prompt Pay Act,

(A)(1) If a subcontractor or material supplier submits an application or request for payment or an invoice for materials to a contractor in sufficient time to allow the contractor to include the application, request, or invoice in the contractor's own pay request submitted to an owner, the contractor, within ten calendar days after receipt of payment from the owner for improvements to property, shall pay to the:

(a) Subcontractor, an amount that is equal to the percentage of completion of the subcontractor's contract allowed by the owner for the amount of labor or work performed;

(b) Material supplier, an amount that is equal to all or that portion of the invoice for materials which represents the materials furnished by the material supplier.

The contractor may reduce the amount paid by any retainage provision contained in the contract, invoice, or purchase order between the contractor and the subcontractor or material supplier, and may withhold amounts that may be necessary to resolve disputed liens or claims involving the work or labor performed or material furnished by the subcontractor or material supplier.

Ohio Rev. Code § 4113.61(A)(1).

The complaint's allegations related to the Act are quite bare-bones:  Berger simply

alleges that under the Act, "it is presumed that after subcontractors have submitted their invoices

for payment to a general contractor that the general contractor will then timely submit its own

request to the owner," but that TolTest has "in bad faith intentionally refrained from billing the

---

[13] Berger does offer a response to another argument raised by TolTest – that the alleged misrepresentations were promises for future performance, and thus not actionable.  Regardless of whether the promises in question were for future or present performance, Berger does not try to (and cannot) overcome the merger agreement.

owner for the amounts due and owing Berger" and has not contended that "it is withholding amounts that may be necessary to resolve disputed liens or claims involving Berger's work or labor performed."  Compl. ¶¶ 123, 125, 126.

TolTest raises a single challenge to Berger's claim – that because the statute defines "owner"[14] as the state or various subdivisions of the state, the statute does not apply here because the applicable owner here – the U.S. government – is not an entity of the State of Ohio.  Motion at 20.  Berger responds that the definition of "owner" under the Act is "irrelevant," but does not explain why.  Response at 19.

The Court rejects TolTest's argument.  The parties do not cite and the Court has not independently found any case law addressing TolTest's argument.  However, it appears to the Court that the statute gives a less-than-comprehensive description of an "owner."  The statute states:   "'Owner' includes the state, and a county, township, municipal corporation, school district, or other political subdivision of the state . . . ."  § 4113.61(F)(6) (emphasis added).  Notably, the statute does not state "owner is defined as . . ." or "owner only includes . . . ".  Accordingly, the statute leaves open the interpretation that "owner" could mean private owners, along with entities of the state.  This understanding – that an "owner" need not be a state entity – is buoyed by the fact that at least some Ohio cases enforce the Act where all of the parties involved are private actors.  See, e.g., Creative Concrete v. D & G Pools, No. 07 MA 163, 2008 WL 2609504, at **1, 6-7 (Ohio Ct. App 2008).

Accordingly, Berger's Ohio Prompt Pay claim is not dismissed on this ground.

**III.   Conclusion**

---

[14] The operative term is in the initial clause:  If a subcontractor or material supplier submits an application or request for payment or an invoice for materials to a contractor in sufficient time to allow the contractor to include the application, request, or invoice in the contractor's own pay request submitted to an owner . . ."  Ohio Rev. Code § 4113.61(A)(1)(emphasis added).

For the foregoing reasons, the motion to dismiss (Dkt. 24) is granted in part and denied in part.  Specifically, the motion is granted as to Count 3, (quantum meruit), Count 4 (account stated), Count 5 (promissory estoppel) and Count 6 (innocent misrepresentation); and denied as to Count 1 (Miller Act/claim on the payment bond), Count 2 (breach of contract), and Count 7 (violation of the Ohio Prompt Pay Act).

SO ORDERED.


Dated:  January 11, 2012                       s/Mark A. Goldsmith
          Flint, Michigan                      MARK A. GOLDSMITH
                                               United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 11, 2012.

                                               s/Deborah J. Goltz
                                               DEBORAH J. GOLTZ
                                               Case Manager